Roy **CASTEGNETO**, Jonathan Katarivas, Michael B. O'Rourke, Stephen Rowan and William L. Strigler, Plaintiffs,

v.

**CORPORATE EXPRESS, INC.**, U.S. Delivery Leasing—New England, Inc., Boston Package Delivery, Inc., and National Independent Contractors Association, Inc., Defendants.

No. CIV.A. 97–11154PBS.

United States District Court, D. Massachusetts.

Jan. 28, 1998.

---

Marla Kirk of Gilman, McLaughlin & Hanrahan, Boston, MA, William T. Koski of Koski & Kearns, Boston, MA, for Plaintiffs.

Jeffrey R. Martin of Burns & Levinson, Boston, MA, James R. Weiss, Leanne E. Myers, John Longstreth from Preston, Gates, Ellis & Rouvelas, Meeds, LLP, Washington, DC, for Defendants.

## ORDER

SARIS, District Judge.

Report and recommendation is allowed without objection.

*FINDINGS AND RECOMMENDATION ON Defendant's Motion to Dismiss*

ALEXANDER, Chief United States Magistrate Judge.

Parties appeared before this Court on Defendants' motion to dismiss for failure to state a claim. Attorneys Kirk and Koski appeared on behalf of Plaintiffs (collectively referred to as "Castegneto") and Attorneys Longstreth, Cooley, and Martin appeared on behalf of Defendants (collectively referred to as "Boston Package"). For the following reasons, Boston Package's motion is hereby ALLOWED.

The relevant facts are as follows.[1] Castegneto is an independent contractor in the package delivery business who works for or has worked for Boston Package. Boston Package is a Massachusetts corporation that is in the package delivery business. Boston Package implemented a policy on June 1, 1996[2] whereby it threatened to terminate contractual relations with any independent contractors who were not members of the National Independent Contractors Association ("NICA"). NICA solicits companies such as Boston Package and distributes literature that promotes NICA as an organization that would provide services to the companies. NICA also provides certain services to its members including disability insurance and the use of radio and paging equipment. Castegneto contends that in requiring membership in NICA, Boston Package and NICA have effected an unlawful tie under 15 U.S.C. § 1 (the Sherman Act) in which Castegneto is forced to purchase products and services from NICA that Castegneto either does not want or could obtain on the open market.[3]

The Supreme Court has defined tying as "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *Northern Pac. Ry. v. United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958). Though some forms of tying are unlawful *per se*[4] and others are unlawful under a rule of reason, not all tying arrangements are unlawful. *Jefferson Parish Hosp. Dist. No.2 v. Hyde*,

---

1. For purposes of this motion, factual allegations in Castegneto's complaint are taken as true.

2. In 1994, Boston Package reduced independent contractors' commissions by 9% per delivery if they were not members of NICA.

3. Castegneto alleges that the weekly fee NICA charges in exchange for these services far exceeds any benefit derived therefrom.

4. "[T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Northern Pac. Ry.*, 356 U.S. at 5, 78 S.Ct. 514.

466 U.S. 2, 11, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984).

■ A tying arrangement is unlawful per se when plaintiff shows that (1) there is an 'agreement' or 'condition' establishing a tie; (2) the tie links 'two separate products'; (3) the seller has 'market power' in the tying product; and (4) the tie forecloses a 'not insubstantial' amount of potential sales for the tied product. *See Borschow Hosp. and Med. Supplies, Inc. v. Cesar Castillo Inc.*, 96 F.3d 10, 17 (1st Cir.1996); *Grappone, Inc. v. Subaru of New England, Inc.*, 858 F.2d 792, 794 (1st Cir.1988). The Supreme Court has stated that a court should prohibit a tying arrangement under a rule of reason analysis when according to its "demonstrated economic effects[,] ... [tying's] anticompetitive impact outweighs its contribution to efficiency." *Jefferson Parish*, 466 U.S. at 41–42, 104 S.Ct. 1551 (1984). This Court reviews the sufficiency of Castegneto's factual allegations relative to the foregoing.

Boston Package moves this Court to dismiss Castegneto's complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). It is settled law that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While Castegneto must do more than cite relevant antitrust language to state a claim for relief, *T.V. Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022 (10th Cir.1992), the First Circuit has stated that "[t]here is no special rule requiring more factual specificity in antitrust pleadings." *Corey v. Look*, 641 F.2d 32, 38 n. 10 (1st Cir.1981) (citing *Hunt–Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 924 (9th Cir.1980)). In fact, courts may give closer scrutiny to motions to dismiss in antitrust cases because " 'proof is largely in the hands of the alleged conspirators.' " *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976) (citation omitted). Accordingly, this Court will dismiss the complaint only if, taking the complaint's factual averments as true and drawing all reasonable inferences in favor of the plaintiff, *Coyne v. City of Somerville*, 972 F.2d 440, 442–43 (1st Cir.1992), Castegneto has failed to allege each element of a tying claim.

Boston Package contends that the following deficiencies exist in Castegneto's complaint: (1) the employment contract cannot be a tying product because Boston Package is the buyer of the tying product; (2) Castegneto insufficiently alleged market power in the tying market; (3) the tying product is not in the tying product market; and (4) Boston Package does not have an actionable economic interest in the tied product market.

■ This Court first addresses Boston Package's contention that an employment contract [5] cannot be a tying product because employees sell their services to rather than purchase their services from their employers. At the hearing and in its memorandum, Boston Package relied on *DeJesus v. Sears Roebuck & Co.*, 87 F.3d 65 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996) and *Waldo v. North American Van Lines, Inc.*, 669 F.Supp. 722 (W.D.Pa.1987) to support its assertion. In *DeJesus*, an insurance company implemented a program that provided the company's agents with the opportunity to run their own offices. Plaintiffs alleged that they were forced, as a condition of employment, to advertise through an entity controlled by their employer. 87 F.3d at 71. In determining whether the agents' employment contracts could serve as a tying product, the court stated that "[i]t is simply implausible to regard Plaintiffs' employment, a service which they provide to [their employer] and for which they are paid by [their employer] as something that [their employer] is selling to

---

**5.** Castegneto's assertion during the hearing that the tying product is not the employment contract *per se*, but rather, contractual relations between Castegneto and Boston Package is not convincing for two reasons. First, Castegneto describes the relationship between Castegneto and Boston Package as an employment contract more than once in its opposition to Boston Package's motion. Second, regardless of the name given the contract, its function and purpose was an exchange of services provided by Castegneto for money provided by Boston Package.

Plaintiffs." *DeJesus*, 87 F.3d at 71. Accordingly, the *DeJesus* court held that plaintiffs did not purchase the tying product from their employer and, therefore, could not make a tying claim.

While not challenging Boston Package's claim that "an illegal tying arrangement requires that at least two products and/or services be purchased by the same individual" *Waldo*, 669 F.Supp. at 731, Castegneto distinguishes *DeJesus* and *Waldo* from the case sub judice by focusing on the fact that those cases involved an ordinary employee-employer relationship. Castegneto, on the other hand, is an independent contractor who maintains a contractor-contractee relationship with Boston Package. Castegneto's first argument, therefore, is that his status as an independent contractor rather than as an ordinary employee is sufficient to distinguish *DeJesus* and *Waldo* from the case sub judice in a way that is relevant under tying law.

Castegneto's contention is unavailing. The critical distinction here is not whether Castegneto is an employee or an independent contractor, but whether he is a buyer at both stages of the allegedly tied transaction (purchaser of the tying product and purchaser of the tied product). Castegneto's status as an independent contractor, standing alone, is not sufficient because the factors courts examine in order to differentiate between an independent contractor and an ordinary employee do not distinguish between a buyer and a seller.[6] These factors are relevant in other bodies of law including antitrust law[7] because the distinction between ordinary employee and independent contractor *is* the "matrix of the controversy." *Columbia River Packers Ass'n v. Hinton*, 315 U.S. 143, 147, 62 S.Ct. 520, 86 L.Ed. 750 (1942). The distinction is of no moment here, however, because it has no place on the tying matrix.

During the hearing, Castegneto raised a second argument which is that he is a buyer because he buys the telephone calls that describe the deliveries to be made. This argument fails for two reasons. First, the tying product Castegneto alleged in his complaint, in his opposition, and at other instances during the hearing was the contractual 'relationship' between Castegneto and Boston Package, not the phone calls. Castegneto cannot have one tying product for one purpose and a second for another.[8] Second, following Castegneto's argument would be tantamount to turning every tying case involving employment into a game of semantics and subjective viewpoint. This Court refuses to follow Castegneto's lead for obvious reasons.

Accordingly, this Court holds that both ordinary employees and independent contractors sell their services. Supreme Court

---

**6.** In determining whether a hired party is an employee under the general common law of agency, the Supreme Court considers:

the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751–52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (footnotes omitted).

**7.** The distinction is relevant to specific areas of antitrust law that do not include tying, *Columbia River Packers Ass'n v. Hinton*, 315 U.S. 143, 62 S.Ct. 520, 86 L.Ed. 750 (1942) (Section 20 of the Clayton Act, 29 U.S.C. 52, and section 1 of the Norris–LaGuardia Act, 29 U.S.C. § 101, divest federal courts of the power to issue an injunction in a case involving a labor dispute); discrimination law, *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256 (4th Cir.1997); torts, *Robb v. United States*, 80 F.3d 884 (4th Cir.1996); labor law, *Mednick v. Albert Enters., Inc.*, 508 F.2d 297 (5th Cir.1975); and tax law, *303 West 42nd Street Enters. v. Internal Revenue Service*, 916 F.Supp. 349 (S.D.N.Y.1996).

**8.** Though it can be argued that the contractual relationship is a necessary condition for Castegneto to receive the phone calls, this does not necessarily mean that the contract and the phone calls are the same "product." Castegneto's complaint and memorandum in opposition to the motion to dismiss discuss only the contractual relationship between Castegneto and Boston Package and do not mention the phone calls as such or as the tying product.

case law supports this finding. In *United States v. National Ass'n of Real Estate Boards*, 339 U.S. 485, 490, 70 S.Ct. 711, 94 L.Ed. 1007 (1950), the Court stated that even though an association of real estate brokers was actually an association of independent contractors, the brokers were engaged in the "sale of personal services." The Court reached the same conclusion for a group of physicians. *See American Med. Ass'n v. United States*, 317 U.S. 519, 63 S.Ct. 326, 87 L.Ed. 434 (1943); *see also,* I Phillip Areeda and Donald F. Turner, *Antitrust Law*, § 229c at 196 (1978) (analyzing *American Med. Ass'n* and stating that an independent "physician, like an ordinary employee, sells his personal services. . . ."). In short, the employment market is one in which employees and independent contractors alike are the vendors.

Castegneto's reliance on *Bazal v. Belford Trucking Co.*, 442 F.Supp. 1089 (S.D.Fla. 1977) is misplaced. Although *Bazal* explicitly states that "a contract of employment can fall within the category of a 'tying product'," the *Bazal* court's analysis is centered around the proposition that a tying "product" need not be tangible. As such, the *Bazal* court found that contracts could be tying products. This Court does not disagree with the *Bazal* court on that general issue; rather, this Court focuses on distinguishing between types of contracts and analyzing the functional relationship between and among the facts presented here. Simply stated, this Court holds that "employment" contracts, notwithstanding the fact that an independent contractor is providing the service, cannot serve as a tying product because independent contractors sell their services to the contractee. Accordingly, Castegneto's tying claim against Boston Package is hereby DISMISSED.

In addition to violations of federal law, Castegneto also contends that Boston Package's conduct violates state law. Mass. Gen. Laws, ch. 93A. Boston Package moves this Court to dismiss the state law claim because this Court cannot exercise jurisdiction over the state claims once the federal claims are dismissed.

Although federal courts have discretion[9] in maintaining jurisdiction over state law claims, *see Budnick v. Baybanks, Inc.*, 921 F.Supp. 30, 33 (D.Mass.1996), the First Circuit has stated that if a "court determine[s] so far in advance of trial that no legitimate federal question exist[s], the jurisdictional basis for plaintiff's pendent claims under [state] law evaporate[s]." *Martinez v. Colon*, 54 F.3d 980, 990 (1st Cir.), *cert. denied*, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995).

Accordingly, Castegneto's state law claims are also DISMISSED.

SO ORDERED.

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980); *see also Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).

---

**9.** 28 U.S.C. § 1367(c) provides that a court *"may* decline to exercise supplemental jurisdiction over a claim if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." (emphasis added); *see also United* *Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (stating that relevant factors for courts to consider in maintaining discretion include "judicial economy, convenience and fairness to litigants").